IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Rachel Farneth,                         :
                         Petitioner     :
                                        :
            v.                          : No.  588 M.D. 2018
                                        : Submitted:  September 9, 2025
Commonwealth of Pennsylvania,           :
Pennsylvania State Police,              :
                         Respondent     :


BEFORE:    HONORABLE ANNE E. COVEY, Judge
           HONORABLE CHRISTINE FIZZANO CANNON, Judge
           HONORABLE STACY WALLACE, Judge


OPINION NOT REPORTED

MEMORANDUM OPINION
BY JUDGE WALLACE                          FILED:  September 25, 2025


        Before this Court in our original jurisdiction is the Pennsylvania State Police's
(PSP) Application for Summary Relief (Application), requesting this Court dismiss
Rachel Farneth's (Farneth) Petition for Review (Petition).[1]  Upon review, we deny
the Application.

## I.      Background

        Farneth filed the Petition against PSP in this Court on September 10, 2018.
Farneth's Petition generally alleges PSP violated the Whistleblower Law[2] by
terminating Farneth's employment in retaliation after she reported an instance of

---

[1]   Farneth titled her filing a "Complaint."
[2]   Act of December 12, 1986, P.L. 1559, *as amended*, 43 P.S. §§ 1421-1428.

waste to PSP, her employer at the time. *See generally* Petition. Farneth made numerous factual allegations in her Petition, which we summarize as follows.

Farneth was employed as an executive secretary in PSP's executive office between November 2015 and July 2017. Petition, ¶¶ 7-9, 37-38. Around June 2016, PSP hired a new Administrative Officer I (Officer) in the PSP executive office. *Id.* ¶ 10. Farneth immediately began to observe that Officer "was routinely absent from her post for no business purpose, while she was supposed to be working." *Id.* ¶ 11. Farneth reported Officer's behavior to Farneth's supervisor on several occasions during 2016, and Farneth's supervisor indicated he would speak with Officer's supervisor about Farneth's concerns. *Id.* ¶¶ 12-13. Farneth's supervisor also told Farneth she did not need to concern herself with Officer's behavior, and that Officer's supervisor had warned Officer about being absent from her post. *Id.* ¶ 14.

Farneth then began to record Officer's absences in a log. *Id.* ¶ 16. Between January 30, 2017 and April 10, 2017, Farneth observed Officer: (a) arriving late to work 27 times, totaling 15 hours and 55 minutes; (b) departing work early 19 times, totaling 16.5 hours; and (c) failing to report to work on days she was scheduled to work 3 times, totaling 22.5 hours. *Id.* ¶¶ 17-25. In addition, Farneth observed that when Officer was working, she was routinely absent from her post for no business purpose. *Id.* ¶ 26. On or about April 10, 2017, Farneth showed her log of Officer's work absences to Farneth's supervisor, who responded with hostility and directed Farneth to stop keeping track of Officer's attendance. *Id.* ¶¶ 27-29. Farneth then stopped recording Officer's absences, but still observed Officer arriving late, departing early, and being routinely absent from her post for no business purposes. *Id.* ¶¶ 30-31. Farneth also reported her concerns to PSP's Labor Relations Section

and Human Resources. *Id.* ¶ 33. At least one other employee also made a similar report. *Id.* ¶ 34. Farneth asserts Officer's conduct, and Officer's supervisor's knowledge of, and failure to correct, that conduct, constitutes waste under the Whistleblower Law. *Id.* ¶¶ 32, 36.

On July 31, 2017, the PSP Academy (Academy) accepted Farneth as a cadet, with her official enlistment beginning on September 18, 2017. *Id.* ¶¶ 37-38. After enlisting in the Academy, Farneth requested PSP revoke her access to several databases she used in her position as an executive secretary, but PSP did not revoke her access. *Id.* ¶¶ 40-41. On October 18, 2017, Farneth was using the computer lab at the Academy, and she received "an unsolicited, time-sensitive e-mail of the utmost importance regarding a former duty of hers in the PSP Executive Office, which she knew were now to be performed by [Officer]." *Id.* ¶ 42. Farneth observed errors in Officer's work, believed this was an important matter, and emailed Officer and a second former co-worker to inform Officer she received the email and Officer needed to correct her errors. *Id.* ¶¶ 43-46.

On October 20, 2017, the Academy notified Farneth she violated the Academy's rules by using an Academy computer at an inappropriate time. *Id.* ¶ 48. Farneth believes Officer reported Farneth's email to Farneth's former supervisor and Officer's supervisor, who then reported it to the Academy in retaliation for her good faith reports of waste. *Id.* ¶¶ 49, 53. A PSP adjudicator interviewed Farneth on two separate occasions regarding her alleged violations of Academy rules. *Id.* ¶ 54. The adjudicator informed Farneth he completed his investigation and sent a proposed adjudication to the PSP executive office. *Id.* Farneth did not believe her discipline would be dismissal at this point. *Id.* ¶ 55.

The PSP executive office "returned the proposed adjudication on the basis of supposedly new evidence not previously identified in the adjudication report, after which [Farneth] had another interview and pre-disciplinary conference." *Id.* ¶ 56. This new evidence included a memorandum from Farneth's supervisor instructing Farneth to not log Officer's absence from the worksite and to not report her concerns to Human Resources, as well as Farneth's statements during previous interviews that she did not receive such a memorandum. *Id.* ¶ 57. Farneth does not recall seeing the memorandum previously but does acknowledge her supervisor verbally told her everything contained in the memorandum. *Id.* ¶¶ 57-58. Farneth alleges, however, that whether she recalled seeing the memorandum "is immaterial to the investigation and whether [Farneth] violated any PSP rules and/or regulations." *Id.* ¶ 59.

Farneth alleges her former supervisor or Officer's supervisor submitted the memorandum "out of their hostility and antagonism toward [Farneth] on account of her good faith reports of waste." *Id.* ¶ 60. PSP ultimately concluded Farneth was untruthful during her interviews and dismissed her from PSP and the Academy. *Id.* ¶ 61. Farneth asserts her former supervisor and Officer's supervisor were decisionmakers in the process of her dismissal. *Id.* ¶ 63. Farneth also asserts the reasons for her dismissal were false and pretextual, she did not lie about any material matters during PSP investigation, and her conduct did not warrant dismissal. *Id.* ¶¶ 64-66. Farneth further asserts she performed her duties for PSP appropriately, PSP did not consider mitigating factors, and PSP's termination of Farneth and dismissal of Farneth from the Academy "was on account of the retaliatory actions of" her former supervisor and Officer's supervisor. *Id.* ¶¶ 67-69.

Finally, Farneth claimed she suffered lost wages, benefits, and privileges, as well as other damages because of PSP's retaliatory conduct. *Id.* ¶ 70. Farneth

4

requested this Court enter a declaratory judgment that PSP violated her rights under the Whistleblower Law. *Id.* ¶ 72a. Farneth also requested a preliminary and permanent injunction enjoining PSP from violating the Whistleblower Law, an award of her certification of successful completion of the Academy training, reinstatement of her employment, and restoration of "all wages, retirement benefits, seniority, and other employment benefits due [to Farneth] had she not been retaliated against." *Id.* ¶ 72b. Lastly, Farneth requested compensatory damages, costs of suit, including reasonable attorney's fees, and any other relief this Court deems just and proper. *Id.* ¶ 72c-e.

PSP filed the Application and presents two main issues as to why PSP has a clear right to relief. First, PSP asserts Farneth has not alleged an instance of waste under the Whistleblower Law. *See* Appl., at 2. Second, PSP asserts Farneth cannot establish a causal connection between her alleged report of waste and her termination from employment. *Id.*

Regarding Farneth's ability to establish an instance of waste under the Whistleblower Law, PSP claims Officer was utilizing her earned leave time. *See* PSP's Br. in Supp. of Appl. (PSP Brief), at 8-9. Thus, PSP alleges "Farneth cannot demonstrate with sufficient evidence that [Officer's] use of her absence benefits resulted in substantial abuse, misuse, or loss of funds to the Commonwealth." *Id.* at 9. Further, PSP asserts "an employee taking advantage of a Commonwealth absence benefit . . . is not an instance of waste that is actionable under the [Whistleblower] Law." *Id.* PSP, in its reply brief in support of the Application, also claimed Farneth was relying solely on inadmissible hearsay (her log of Officer's absences) to prove waste, and she impermissibly extrapolated the information she recorded to include additional date ranges. *See* PSP Reply Br. at 2.

5

Regarding a causal connection between Farneth's alleged report of waste and her termination from employment, PSP asserts Farneth cannot connect her reports of waste with her termination because Farneth's last report was in April 2017, and she remained employed by PSP until July 2017, then with the Academy into October 2017, without experiencing any antagonistic behavior. *See* PSP Br., at 11. PSP claims Farneth can only relate her dismissal to her reports of Officer's attendance with "conclusory allegations." *Id.* PSP argues Farneth admitted PSP's investigation into her violation of Academy rules was not related to the absence reports she made against Officer. *See* PSP Reply Br. at 4. PSP also argues Farneth is simply relying on her perception of facts to allege PSP engaged in antagonistic conduct. *Id*. at 4. Finally, PSP argues the lengthy period between Farneth's report of waste and her termination bars her claims. *Id.* at 4-5.

Farneth's Brief opposing the Application, as well as her sur-reply brief, generally assert PSP has mischaracterized the Petition, her position, and her arguments.

## II. Analysis

Applications for summary relief are governed by Pennsylvania Rule of Appellate Procedure 1532(b), which provides that "[a]ny time after the filing of a petition for review in an appellate or original jurisdiction matter, the court may on application enter judgment if the right of the applicant thereto is clear." Pa.R.A.P. 1532(b). "We may grant summary relief where the dispute is legal rather than factual, but not where there are disputes of fact." *Phantom Fireworks Showrooms, LLC v. Wolf*, 198 A.3d 1205, 1220 (Pa. Cmwlth. 2018) (citation omitted). "Moreover, we review the record in the light most favorable to the nonmoving party, resolving all doubts as to the existence of disputed material facts

6

against the moving party." *Marcellus Shale Coal. v. Dep't of Env't Prot.*, 216 A.3d 448, 458 (Pa. Cmwlth. 2019) (citation omitted). "Even if the facts are undisputed, the moving party has the burden of proving that its right to relief is so clear as a matter of law that summary relief is warranted." *Naylor v. Dep't of Pub. Welfare*, 54 A.3d 429, 431 n.4 (Pa. Cmwlth. 2012) (citation omitted).

Section 3(a) of the Whistleblower Law provides "[n]o employer may discharge, threaten or otherwise discriminate or retaliate against an employee . . . because the employee . . . makes a good faith report . . . to the employer . . . [of] an instance of wrongdoing or waste by a public body or an instance of waste by any other employer." 43 P.S. § 1423(a). Section 4(b) of the Whistleblower Law further provides that an employee "alleging a violation of [the Whistleblower Law] must show by a preponderance of the evidence that, prior to the alleged reprisal, the employee . . . reported . . . an instance of wrongdoing or waste to the employer." 43 P.S. § 1424(b).

## A.    Instance of Waste

PSP's first argument Farneth cannot establish an instance of waste is that Officer's use of her employment benefits cannot constitute waste. Farneth, however, did not allege Officer was using her employment benefits. Instead, Farneth alleged Officer was impermissibly absent from her post. Thus, at this stage there is a factual dispute regarding the appropriateness of Officer's absences. Because we cannot grant summary relief when disputes of fact exist, PSP's first argument fails. *See Phantom Fireworks*, 198 A.3d at 1220.

PSP's second argument Farneth cannot establish an instance of waste is that Farneth is solely relying on inadmissible hearsay, in the form of her log of Officer's absences. Farneth disputes whether her log constitutes hearsay. *See* Farneth's

7

Sur-Reply Br. at 1. We need not delve into the admissibility of Farneth's log at this time, however, because Farneth has alleged she personally observed Officer's absences, including the total number of hours Officer was absent for various reasons between January 30, 2017, and April 10, 2017. Farneth also alleged Officer was frequently absent from her post after Farneth was prohibited from keeping track of Officer's absences. Thus, Farneth is relying on her personal observations, not solely on her log, to show an instance of waste. As a result, PSP's second argument fails.

PSP's third argument Farneth cannot establish an instance of waste is that Farneth impermissibly extrapolated her log of Officer's absences. Specifically, PSP asserts Farneth did not record Officer's absences after April 10, 2017, and any testimony regarding time lost after April 10, 2017, is speculative. Nevertheless, Farneth personally observed Officer's absences after April 10, 2017, and simply alleged her behavior was consistent before and after April 10, 2017. Farneth did not attempt to extrapolate her log by claiming Officer missed a specific number of hours of work after April 10, 2017. PSP's assertion to the contrary is a mischaracterization of the Petition. Accordingly, PSP's third argument also fails.

**B.      Causal Connection**

PSP's second issue is that Farneth did not establish a causal connection between her report of waste and her termination. When alleging a retaliatory termination, "the employee must show a causal connection between the report of wrongdoing and the termination." *Javitz v. Luzerne Cnty.*, 293 A.3d 570, 579 (Pa. 2023) (citations omitted). "To establish the causal connection . . . an employee must show by concrete facts or surrounding circumstances that the report of wrongdoing . . . led to the []dismissal, such as that there was specific direction or information received not to file the report or that there would be adverse

8

consequences because the report was filed." *Id.* at 581 (internal quotations and emphasis omitted) (quoting *Golaschevsky v. Dep't of Env't Prot.*, 720 A.2d 757, 759 (Pa. 1998)).

A "whistleblower plaintiff cannot rely on his or her perception of the facts to support a conclusion that the employer engaged in antagonistic conduct after the report. Instead, the plaintiff must prove the concrete facts or surrounding circumstances from which the factfinder can draw the inference that the employer's conduct was antagonistic." *Javitz*, 293 A.3d at 582-83. In *Javitz*, the Pennsylvania Supreme Court clarified an employee's "subjective perspective" cannot be considered when evaluating whether a plaintiff can prove these concrete facts or surrounding circumstances. *Id.* at 585. The Supreme Court further explained an employee's characterization of her supervisor's behavior as rude was the employee's subjective characterization. *Id.* Meanwhile, "[e]vidence of pre-report performance praise and post-report relocation of her office, restriction of her participation in union meetings and contract negotiations, and changes in the delegation of responsibilities is evidence of fact, not perception, upon which an inference of post-report antagonism and causation could be based." *Id.*

PSP's first argument that Farneth cannot establish a causal connection between her report of waste and her termination is she simply cannot connect the two. Farneth, however, alleged she was directed by her supervisor to not concern herself with Officer's absences, but that she still recorded Officer's absences and reported the same to her supervisor and Human Resources. Farneth also alleged she would not have been terminated for improperly using a computer at the Academy unless Farneth's former supervisor and Officer's supervisor intervened. Finally, Farneth alleged PSP ultimately terminated her employment because of comments

9

she made that related to her report of waste, not her utilization of a computer at the Academy. We conclude that at this stage, these allegations are sufficient to establish "surrounding circumstances that the report of wrongdoing . . . led to the []dismissal." *See Golaschevsky*, 720 A.2d at 759. As a result, PSP's first argument fails.

PSP next argues Farneth cannot establish a causal connection between her report of waste and her termination because Farneth admitted PSP's investigation into her violation of Academy rules was not related to the absence report she made against Officer. PSP is, again, selectively interpreting Farneth's allegations. Farneth also alleged PSP's investigation ultimately reached into her previous reports of waste, and that it was her comments related to her previous report of waste which led to her termination, not her conduct at the Academy. Consequently, PSP's second argument also fails.

PSP's third argument Farneth cannot establish a causal connection between her report of waste and her termination is that Farneth is relying on her perception of facts to allege PSP engaged in antagonistic conduct. Nevertheless, PSP has not identified a specific allegation of Farneth and claimed it is her subjective perspective. *See Javitz*, 293 A.3d at 585. Farneth's allegations, as fully outlined above, were that she was not going to be terminated from employment until her former supervisor and Officer's supervisor intervened in her disciplinary proceedings. Specifically, an adjudicator recommended discipline that did not include termination, the matter was referred to the PSP executive office, where Farneth's former supervisor and Officer's supervisor worked, and the matter returned with new information related to Farneth's alleged reports of waste, which ultimately resulted in Farneth's termination. These allegations are "evidence of fact,

10

not perception, upon which an inference of post-report antagonism and causation could be based." *Id.* Accordingly, PSP's third argument fails.

PSP's final argument Farneth cannot establish a causal connection between her report of waste and her termination is that too much time elapsed between her report of waste and her termination. Specifically, PSP asserts Farneth's disciplinary investigation began 6 months after her report of waste, and her termination occurred 11 months after her report of waste. While the timing between an alleged retaliatory discharge and the report of wrongdoing is relevant, *see Golaschevsky*, 720 A.2d at 760, PSP has not pointed to any authority which would bar a Whistleblower Law claim after a specific period of time such that disposing of this controversy without a trial would be proper. Consequently, the time between Farneth's report of waste and her termination does not bar Farneth's claim, and PSP's final argument also fails.

### III.   Conclusion

For the reasons set forth above, we deny PSP's Application.

_____
STACY WALLACE, Judge

IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Rachel Farneth,                          :
                    Petitioner           :
                                         :
        v.                               :  No.  588 M.D. 2018
                                         :
Commonwealth of Pennsylvania,            :
Pennsylvania State Police,               :
                    Respondent           :

# **O R D E R**

    **AND NOW**, this 25th day of September 2025, the Application for Summary Relief filed by the Pennsylvania State Police on May 17, 2024, is **DENIED**.

_____
STACY WALLACE, Judge